Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | MARVIN E. ASPEN | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 99 C 932 | DATE | 4/24/2000 |
| CASE TITLE | John Virgil McCutcheon v. Dr. Kul Sood, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Plaintiff's motion for appointment of counsel is denied. Defendants' motion for summary judgment is granted. The clerk is directed to enter judgment in favor of defendants Dr. Kul Sood and Nurse Sharon Russell and against plaintiff John V. McCutcheon pursuant to Fed.R.Civ.P. 56. The case is terminated.

(11) ■ [For further detail see attached order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | APR 2 6 2000 date docketed | |
| X | Docketing to mail notices. | | IS docketing deputy initials | 29 |
| X | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| CLH courtroom deputy's initials | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



APR 26 2000

JOHN VIRGIL McCUTCHEON,     )
                            )
    Plaintiff,               )
                            )
    v.                      )     Case No. 99 C 932
                            )
DR. KUL SOOD, et al.,       )
                            )
    Defendants.             )

MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

Plaintiff John V. McCutcheon, currently an inmate at Hill Correctional Center, has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 alleging that health care providers at Joliet Correctional Center violated his constitutional rights by acting with deliberate indifference to his medical needs. On October 4, 1999, the court granted in part and denied in part defendants' motion to dismiss. Three claims and two defendants remain in this action: (1) Dr. Sood has denied or delayed needed surgery for a lump on McCutcheon's testicle; (2) Dr. Sood has refused to authorize state-issued orthopedic boots; and (3) Nurse Russell acted with deliberate indifference to McCutcheon's medical emergency (breathing problems) on June 13, 1998. Defendants Sood and Russell have filed a motion for summary judgment to which McCutcheon has responded.

McCutcheon has also filed a motion for appointment of counsel, and a court must rule on a motion for appointment of counsel before considering a motion for



summary judgment. *Brown-Bey v. U.S.*, 720 F.2d 467, 471 (7th Cir. 1983). McCutcheon is an experienced *pro se* litigator, and a review of his pleadings and motions to date demonstrate that he is well able to represent himself. Having reviewed this case in light of the factors set out in *Maclin v. Freake*, 650 F.2d 885, 887 (7th Cir. 1981), the court determines that McCutcheon does not require an attorney and denies his motion for appointment of counsel.

## I. Standard of Review

Summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The party moving for summary judgment has the initial burden of submitting affidavits and other evidentiary material to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). A genuine issue of material fact exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Once the moving party has sustained the initial burden, the opposing party may not rest upon the mere allegations or denials of the pleadings, but instead must come forward with specific evidence, by affidavits or as otherwise provided in Rule 56, showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. However, the facts are construed in the light most favorable to the nonmoving party and all inferences are drawn in his favor. *Holtz v. J.J.B. Hilliard W.L. Lyons, Inc.*, 185 F.3d 732 (7th Cir. 1999).

## II. Facts

McCutcheon was confined at Joliet Correctional Center at all times relevant to this action. Defendant Kul Sood is Joliet's medical director, and defendant Sharon Russell is a staff nurse.

First, McCutcheon alleges that Dr. Sood denied him surgery for a lump on his left testicle although an outside surgeon ordered it. According to defendants' Local Rule 56.1(c) Statement of Uncontested Facts, Dr. Sood first saw McCutcheon for this condition, which is characterized by both parties as epididimitis, in October 1997 (Plaintiff's deposition at pp. 52-53). Dr. Sood suggested that he be seen by a surgeon (Plaintiff's deposition at p. 54). Dr. Natisha, a surgeon, saw McCutcheon on November 5, 1997, and recommended surgical excision (Plaintiff's deposition at pp. 55-56; Affidavit of Dr. Sood). McCutcheon was scheduled for surgery on December 5, 1997, but it was canceled. Permission for outpatient surgery was denied on December 3, 1997, by Dr. Elyea [presumably, a doctor with Wexford Health Sources, Inc., who reviewed the referral for the epididectomy] because there was no indication that the condition was sufficiently serious to warrant surgical excision (Exhibit # 3, letter of Dr. Elyea to Dr. Sood). McCutcheon's epididimitis condition was later categorized as chronic rather than acute (Plaintiff's deposition pp. 65-67). Dr. Schuster, an outside urologist who examined McCutcheon in April 1999, determined that he did not need surgery or other treatment as his condition was neither serious nor disabling (Plaintiff's deposition pp. 70-73; Affidavit of Dr. Sood).

In response, McCutcheon states that Dr. Sood and Dr. Natisha advised him that the surgery for epididimitis was canceled because Joliet Correctional Center had changed contractors but that it would be rescheduled later. McCutcheon states

that Dr. Sood had telephoned Dr. Schuster before McCutcheon's visit to advise Dr. Schuster that McCutcheon had filed a lawsuit in regard to the epididimitis. He believes this influenced Dr. Schuster's diagnosis.

Second, McCutcheon claimed that Dr. Sood delayed examinations or denied examinations by a specialist for his fallen arches and that Dr. Sood did not permit the proper state boots to be issued to McCutcheon. According to defendants' Local Rule 56.1(c) Statement of Uncontested Facts, Dr. Sood prescribed a foot pad for McCutcheon to insert into his boot on September 19, 1997, and he received it within a week (Plaintiff's deposition at p. 7). McCutcheon complained about his foot problems again on November 4, 1997, and Dr. Sood advised him to get a wider boot (Plaintiff's deposition at. pp. 9-11). On November 17, 1997, Dr. Sood diagnosed McCutcheon as having flat feet and prescribed an arch support (Plaintiff's deposition at pp. 13-14). Because the arch support was bruising McCutcheon's foot, Dr. Sood advised him on December 14, 1997, that he would attempt to get McCutcheon a dress shoe (Plaintiff's deposition at pp. 15-16). McCutcheon received the dress shoe on December 22, 1997, which worked satisfactorily until it wore out in October 1998 (Plaintiff's deposition at pp. 16-17).

McCutcheon did not receive a replacement pair of shoes but he believes this was because Joliet Correctional Center changed medical contractors from Wexford to CMS about this time (Plaintiff's deposition p. 22) and because he needed "paperwork" required by the supervisor of the clothing room (Plaintiff's deposition p. 24). In October 1998, McCutcheon threatened to bring a lawsuit if he were not given new dress shoes (Affidavit of Dr. Sood). On November 17, 1998, McCutcheon purchased a pair of gym shoes from the commissary with the assistance of the warden

(Plaintiff's deposition p. 30). In January 1999, McCutcheon was advised that Assistant Warden Gillen had approved his request for new shoes (Affidavit of Dr. Sood). Dr. Sood has never had authority or responsibility for determining which medical contractors and providers are hired by the Illinois Department of Corrections or for determining what types and kinds of footwear are manufactured, purchased, and provided to inmates by the Illinois Department of Corrections (Affidavit of Dr. Sood).

In response, McCutcheon avers that Dr. Sood had the authority to order shoes from an outside vendor and had done so for many inmates with foot problems. He states that on October 21, 1998, he did not demand new shoes but rather showed the bald shoes to Dr. Sood and several other people, explaining that he could not walk on the ice with bald shoes. He also asked to see a foot specialist. He states that he never told Dr. Sood that Assistant Warden Gillen had approved new shoes and that Gillen held a meeting on October 27, 1998, with him and Dr. Sood. McCutcheon claims that Dr. Sood told him to try the arch supports for 30 days and if they did not help, then he would receive special shoes. Eight days later, McCutcheon received the dress shoes, which he contends Dr. Sood recommended, not him. McCutcheon apparently thought he would receive shoes such as other inmates with foot problems received. To support his contentions, McCutcheon has attached numerous grievances he has filed, most of which have been denied.

Third, McCutcheon contends that Nurse Russell refused to allow him to go to the hospital when he had an asthma attack and a lung infection that required emergency treatment. According to defendants' Local Rule 56.1(c) Statement of Uncontested Facts, McCutcheon began to have breathing problems in his living quarters on June 13, 1998 (Plaintiff's deposition p. 39). McCutcheon claims that Nurse

Russell instructed Sgt. Jones (the correctional officer present) to tell him to lie down and take deep breaths (Plaintiff's deposition p. 46). McCutcheon's knowledge of what Nurse Russell said was, with the exception of a single comment regarding his breathing, limited to what Sgt. Jones informed him of (Plaintiff's deposition pp. 40-46). Nurse Russell in fact instructed Sgt. Jones to instruct McCutcheon to sit down and use his inhaler (Affidavit of Sharon Russell). Nurse Russell also instructed Sgt. Jones that if the inhaler did not resolve McCutcheon's symptoms, to call her back and she would go to the cell house with a wheelchair to bring him to the Health Care Unit for a breathing treatment (Affidavit of Sharon Russell). Instead, Sgt. Jones called Superintendent Romero, who ordered McCutcheon to be allowed to go to the Health Care Unit (Plaintiff's deposition pp. 41-42 and Affidavit of Sharon Russell). McCutcheon then walked over to the Health Care Unit where he was met en route by Nurse Russell who was herself heading over to McCutcheon's cell house with a wheelchair and respiratory equipment (Affidavit of Sharon Russell).

In his response, McCutcheon states that Nurse Russell lied in her affidavit about meeting him en route to the Health Care Unit. Instead he asserts that Nurse Pat Wigel saw him in distress walking toward the Health Care Unit. She walked with him the rest of the way and immediately began beating him on the back and administering a breathing treatment. McCutcheon claims that Nurse Wigel's testimony will demonstrate that Nurse Russell lied on her affidavit.

### III. Analysis

In order to state an arguable §1983 claim for denial of medical care, an inmate must allege facts evidencing a deliberate indifference to serious medical needs.

*Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Allegations of mere negligence or inadvertence in the diagnosis or treatment of a medical condition will not suffice. *Id.* at 105-06. The Supreme Court refined the *Estelle* definition of "deliberate indifference" in *Farmer v. Brennan*, 511 U.S. 825, 837 (1994), holding that a prison official acts with deliberate indifference when "the official knows of and disregards an excessive risk to inmate health or safety;" and is both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and draws the inference. To act with deliberate indifference, defendants "must want harm to come to the prisoner, or, at least, must possess total unconcern for a prisoner's welfare in the face of serious risks." *Duane v. Lane*, 959 F.2d 673, 676 (7th Cir. 1992) (quoting *McGill v. Duckworth*, 944 F.2d 344, 347 (7th Cir. 1991), *cert. denied*, 503 U.S. 907 (1992). In other words, deliberate indifference requires that defendants either intended to harm plaintiff or knew of a risk of harm so significant that an intent to harm could be inferred from a refusal to provide medical care. See *Smith-Bey v. Hospital Administrator*, 841 F.2d 751, 759 (7th Cir. 1988).

The dissatisfaction or disagreement with the method of treatment or inability to effect a final cure does not suggest that those who treat an inmate exhibited deliberate indifference. *Snipes v. DeTella*, 95 F.3d 586 (7th Cir. 1996), *cert. denied*, 519 U.S. 1126 (1997); *Estate of Cole v. Fromm*, 94 F.3d 254 (7th Cir. 1996), *cert. denied*, 519 U.S. 1109 (1997); *Meriwether v. Faulkner*, 821 F.2d 408, 413 (7th Cir.), *cert. denied*, 484 U.S. 935 (1987). Mere difference of opinion among medical personnel regarding a patient's appropriate treatment do not give rise to deliberate indifference. *Estelle*, at 107, *Cole* at 261. A plaintiff can show that medical professionals disregarded a serious medical need "only if the professional's subjective

response was so inadequate that it demonstrated an absence of professional judgment, that is, that no minimally competent professional would have so responded under those circumstances." *Collignon v. Milwaukee County*, 163 F.3d 982, 989 (7th Cir. 1998). *Cole* at 261-62.

In light of these principles the court will first examine the two claims in regard to Dr. Sood's medical treatment of McCutcheon's epididimitis and foot problems.

According to *Harrison's Principles of Internal Medicine* 1057 (14th ed. 1998), the major cause of epididymitis in men over 35[1] are coliform bacteria and *Pseudomonas aeruginosa*, usually in association with preceding urologic instrumentation or surgery. Antimicrobial agents, that is, antibiotics, are the mainstays of therapy. In his affidavit, Dr. Sood states that on November 5, 1997, Dr. Natisha saw McCutcheon and diagnosed several small nodules in the testicles as likely chronic epididimitis. Blood tests came out negative. Dr. Natisha indicated that an epididectomy was one treatment choice. On January 20, 1999, McCutcheon was seen by Dr. Sood complaining of testicular distress. Dr. Sood noted both testicles to be of normal size and shape. McCutcheon was prophylactically prescribed doxycycline for two weeks and was to follow up with a surgical evaluation with Dr. Natisha. On April 26, 1999, McCutcheon was seen by a urologist, Dr. Schuster, who diagnosed two small 1-mm calcifications along the penile corpora which were benign. Dr. Schuster noted no evidence of acute or chronic epididimitis nor was the condition disabling enough to warrant surgery or treatment at that time. These statements are supported by McCutcheon's extensive medical records.

---

[1] According to the web site of the Illinois Department of Corrections, McCutcheon's birth date is June 14, 1949.

Dr. Sood's affidavit and McCutcheon's medical records demonstrate that McCutcheon was tested early on for epididimitis when he first complained about the nodules on his testicle. A urologist ultimately determined that he did not have epididimitis but had two calcifications which did not warrant surgery or treatment. Perhaps McCutcheon would prefer to have these calcium deposits removed, but his preference as to medical treatment is not the issue here. The issue is whether Dr. Sood was deliberately indifferent to his serious medical needs. At least three doctors have examined McCutcheon's testicles. Although Dr. Natisha recommended surgery, the specialist in the area, Dr. Schuster, ultimately determined that surgery was not necessary for removal of these benign calcium deposits. This is merely a difference of opinion among medical personnel regarding a patient's appropriate treatment. This is not deliberate indifference to McCutcheon's serious medical needs. See Estelle, 429 U.S. at 107, Cole 94 F.3d at 261. Although McCutcheon avers that Dr. Sood called Dr. Schuster in order to influence him to recommend against the surgery, this is speculation on the part of McCutcheon and he has not supported this statement with any affidavits or other proof. The court accordingly finds that Dr. Sood has not been deliberately indifferent to McCutcheon's testicular distress.

Dr. Sood states in his affidavit that McCutcheon's flat feet or fallen arches are not a serious medical need. In Gutierrez v. Peters, 111 F.3d 1364, 1373 (7th Cir. 1997), the Seventh Circuit examined in depth what constitutes a serious medical need. Among the approaches it adopted in defining "seriousness," the Court of Appeals quoted approvingly from McGuckin v. Smith, 974 F.2d 1050, 1060 (9th Cir. 1992), that "the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain" is a serious medical

need. For purposes of this opinion, the court will assume that McCutcheon's flat feet or fallen arches could significantly affect his daily activities or lead to chronic and substantial pain. The question then becomes whether Dr. Sood was deliberately indifferent to McCutcheon's flat feet.

The record demonstrates that Dr. Sood prescribed arch supports for McCutcheon. When the arch supports did not fit the state-issued boots properly and caused bruising, Dr. Sood obtained dress shoes for McCutcheon that would alleviate this problem. McCutcheon's main beef appears to be that when the dress shoes began to wear out, it took several months to replace them. This delay in replacing the shoes cannot be ascribed to Dr. Sood, however, as the delay came about either because of the change in medical contractors or because of paperwork required by the supervisor of the clothing room. Moreover, McCutcheon does not contend that the shoes were unwearable but rather that they were bald on the bottom and he could slip on the ice as a result. He also avers that Dr. Sood obtained other shoes, which McCutcheon presumably considered more appropriate for his foot problems, for other inmates. Other than his own assertions, however, he has not provided a proper foundation by affidavit or otherwise to support these statements. The record amply demonstrates that Dr. Sood was not deliberately indifferent to McCutcheon's flat feet.

The court finally turns to McCutcheon's claim that Nurse Russell was deliberately indifferent to his breathing difficulties on June 13, 1998. As recounted earlier, McCutcheon and Nurse Russell relate conflicting versions of the events at issue. Nurse Russell's assertions are supported by her affidavit. Although McCutcheon did not submit any evidentiary material in his response to the motion for summary judgment, he declared under penalty of perjury that his complaint was true,

thus converting the factual assertions into an affidavit. See Ford v. Wilson, 90 F.3d 245, 246-47 (7th Cir.1996), cert. denied, 520 U.S. 1105 (1997).

The court recognizes that in ruling on a motion for summary judgment, the court cannot weigh affidavits or make credibility determinations. See Castillo v. United States, 34 F.3d 443, 445 (7th Cir. 1994) (a determination of credibility cannot be made on the basis of an affidavit). The court therefore will accept McCutcheon's account as true. Nevertheless, even accepting his factual assertions, he has no viable cause of action relating to his asthma attack because he had no serious medical need. In paragraph 17 of his affidavit, Dr. Sood states that McCutcheon was seen by Nurse Lee Redmond on June 12, 1998, complaining of breathing problems. He tested a peak flow of 250, which is borderline normal and does not constitute acute distress. His medical chart did not indicate that he was in any distress. On June 13, 1998, McCutcheon was seen by both CMT Pat Wigle and Dr. Sood. He tested a peak flow of 225, which is borderline normal and does not constitute acute distress. McCutcheon has offered nothing to demonstrate that he was in acute distress during these asthma attacks or that he suffers from more than a mild case of asthma, which is not a serious medical need. See Oliver v. Deen, 77 F.3d 156 (7th Cir. 1996) (mild case of asthma is not a serious medical need).

Moreover, even if events happened exactly as McCutcheon described, it resulted in nothing more than a half-hour delay in receiving a breathing treatment for an asthma attack, which in Dr. Sood's medical opinion, supported by the medical records, was not critical. Even by McCutcheon's own account, Nurse Russell did not ignore his medical needs; she allegedly instructed the correctional officer to tell McCutcheon to lie down and take deep breaths. Because the medical records indicate that McCutcheon

had an inhaler, these instructions do not amount to deliberate indifference to McCutcheon's needs. The court accordingly finds that the asthma attack was not a serious medical need and that Nurse Russell was not deliberately indifferent McCutcheon's asthma attack.

## IV. Conclusion

For the foregoing reasons, defendants Dr. Kul Sood and Nurse Sharon Russell's motion for summary judgment is granted. The clerk is directed to enter judgment in favor of defendants Dr. Kul Sood and Nurse Sharon Russell and against plaintiff John V. McCutcheon pursuant to Fed.R.Civ.P. 56. The case is terminated.

If McCutcheon wishes to appeal this dismissal, he may file a notice of appeal with this court within 30 days of the entry of judgment. Fed.R.App.P. 4(a)(4). If he does so, he will be liable for the $105 appellate filing fee. Unless he is granted leave to proceed *in forma pauperis*, he will have to pay the fee immediately. If he cannot do so, the appeal will be dismissed, but he will remain liable for the fee and it will be deducted from his inmate trust fund account in installments. *Newlin v. Helman*, 123 F.3d 429, 434 (7th Cir. 1997), *cert. denied*, 522 U.S. 1054 (1998). If this court finds that appeal is not taken in good faith, and the Court of Appeals agrees, he will not be permitted to proceed *in forma pauperis* and pay the fee in installments, but will have to pay the fee immediately or the appeal will be dismissed. 28 U.S.C. § 1915(a)(3); *Newlin*, 123 F.3d at 433-34. To avoid a finding that the appeal is not taken in good faith, a motion to proceed *in forma pauperis* on appeal should explain the grounds for the appeal. *See Hyche v. Christensen*, 170 F.3d 769, 771 (7th Cir. 1999), *cert. denied*, 120 S.Ct. 1276 (2000); Fed.R.App.P. 24(a)(1)(C).

It is so ordered.

                                                                    _____
                                                                    MARVIN E. ASPEN
                                                                    United States District Judge

Dated  4/24/2000